1  Steven N. Williams (SBN #175489)
   swilliams@cpmlegal.com
2  Frank C. Damrell, Jr. (SBN #37126)
   fdamrell@cpmlegal.com
3  Nancy L. Fineman (SBN #124870)
   nfineman@cpmlegal.com
4  Adam J. Zapala (SBN #245748)
   azapala@cpmlegal.com
5  Elizabeth T. Tran (SBN #280502)
   etran@cpmlegal.com
6
7  **COTCHETT, PITRE & McCARTHY, LLP**
   840 Malcolm Rd
8  Burlingame, CA 94010
   Telephone: (650) 697-6000
9  Facsimile: (650) 697-0577

10 Elizabeth C. Pritzker (SBN 146267)
   ecp@pritzker-law.com
11 Bethany L. Caracuzzo (SBN 190687)
   bc@pritzker-law.com
12 Shiho Yamamoto (SBN 264741)
   sy@pritzker-law.com
13
   **PRITZKER | LAW**
14 633 Battery Street, Suite 110
15 San Francisco, CA 94111
   Tel: (415) 692-0772
16 Fax: (415) 366-6110

17 *Attorneys for Plaintiffs and the Proposed Class*

18            **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
19

20 **JOAN MacQUARRIE and BRENDA**          )  Case No. _____
   **KEEGAN, on Behalf of Themselves and all**  )
21 **Others Similarly Situated,**               )
                        **Plaintiffs,**         )  **CLASS ACTION COMPLAINT**
22           **v.**                             )  **FOR DAMAGES AND INJUNCTIVE**
                                                )  **RELIEF**
23 **NIPPON YUSEN KABUSHIKI KAISHA,**        )
                                                )  **JURY TRIAL DEMANDED**
24 **NYK LINE (NORTH AMERICA) INC.,**        )
                                                )
25 **WILH. WILHELMSEN HOLDING ASA,**        )
                                                )
26 **WILH. WILHELMSEN ASA,**                )
                                                )
27 **MITSUI O.S.K. LINES, LTD.,**            )
                                                )
28 **KAWASAKI KISEN KAISHA, LTD.,**          )
   **"K" LINE AMERICA, INC.,**               )

──────────────────────────────────────────

**CLASS ACTION COMPLAINT**

| | |
|---|---|
| 1 | **EUKOR VEHICLE CARRIERS INC.,** ) |
| 2 | **WALLENIUS WILHELMSEN LOGISTICS** ) <br> **AS,** ) |
| 3 | **WALLENIUS WILHELMSEN** ) |
| 4 | **LOGISTICS AMERICAS LLC,** ) <br> **WALLENIUS LINES AB,** ) |
| 5 | **COMPAÑÍA SUD AMERICANA DE** ) |
| 6 | **VAPORES S.A.,** ) |
| 7 | **TOYOFUJI SHIPPING CO., LTD. and** ) <br> **NISSAN MOTOR CAR CARRIER CO., LTD.,** ) |
| 8 | Defendants. ) |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    NATURE OF ACTION ..................................................................................................1

II.    JURISDICTION AND VENUE ...................................................................................3

III.    PARTIES ......................................................................................................................5

     A.      Plaintiffs..............................................................................................................5

     B.      Defendants ..........................................................................................................5

IV.    AGENTS AND CO-CONSPIRATORS .......................................................................7

V.    FACTUAL ALLEGATIONS .......................................................................................7

     A.      The Vehicle Carrier Industry .............................................................................7

     B.      The Market Structure and Characteristics Support the Existence of a
Conspiracy .........................................................................................................9

           1.      The Market for Vehicle Carrier Services Has High Barriers to Entry..........9

           2.      There is Inelasticity of Demand for Vehicle Carrier Services...................10

           3.      The Market for Vehicle Carriers Is Highly Concentrated .........................11

           4.      The Services Provided by Vehicle Carriers Are Highly Homogeneous....12

           5.      Defendants Had Ample Opportunities to Meet and Conspire ...................13

           6.      The Market for Vehicle Carrier Services Has Excess Capacity ................15

     C.      There Is Strong Evidence of Collusion in the Vehicle Carrier Services
Market................................................................................................................18

           1.      Defendants Raised Prices at a Rate that Far Exceeded Demand ...............18

           2.      Defendants Previously Colluded in Different Markets..............................18

           3.      Competition Authorities Have Launched and Coordinated a Global
Government Investigation into Price-Fixing in the Market for Vehicle
Carrier Services.........................................................................................20

VI.    CLASS ACTION ALLEGATIONS ..........................................................................22

VII.    PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY ....................25

VIII.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF
LIMITATIONS..........................................................................................................27

     A.      The Statute of Limitations Did Not Begin to Run Because The Plaintiffs
Did Not and Could Not Discover Their Claims.................................................27

---

**CLASS ACTION COMPLAINT**

    B.     Fraudulent Concealment Tolled the Statute of Limitations....................................28

FIRST CLAIM FOR RELIEF
Violation of Section 1 of the Sherman Act
(on behalf of Plaintiffs and the Nationwide Class)..............................................................29

SECOND CLAIM FOR RELIEF
Violation of State Antitrust Statutes
(on behalf of Plaintiffs and the Damages Class)..................................................................31

THIRD CLAIM FOR RELIEF
Violation of State Consumer Protection Statutes
(on behalf of Plaintiffs and the Damages Class)..................................................................48

FOURTH CLAIM FOR RELIEF
Unjust Enrichment
(on behalf of Plaintiffs and the Damages Class)..................................................................62

PRAYER FOR RELIEF ...........................................................................................................63

JURY DEMAND ......................................................................................................................66

1  Plaintiffs Joan MacQuarrie and Brenda Keegan ("Plaintiffs"), on behalf of themselves

2  and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to

3  the facts pertaining to themselves and upon information and belief as to all other matters, and

4  based on the investigation of counsel, brings this class action for damages, injunctive relief and

5  other relief pursuant to federal antitrust laws and state antitrust, unfair competition, and

6  consumer protection laws, and the common law of unjust enrichment, demand a trial by jury, and

7  allege as follows:

8  ## I.    NATURE OF ACTION

9  1.    This lawsuit is brought as a proposed class action against Defendants Nippon

10  Yusen Kabushiki Kaisha ("NYK Line"), NYK Line (North America) Inc. ("NYK America"),

11  Mitsui O.S.K. Lines, Ltd. ("MOL"), Kawasaki Kisen Kaisha, Ltd. (""K" Line"), "K" Line

12  America, Inc. (""K" Line America"), EUKOR Vehicle Carriers Inc. ("EUKOR"), Wallenius

13  Wilhelmsen Logistics AS ("WWL"), Wilh. Wilhelmsen Holding ASA ("WW Holding"), Wilh.

14  Wilhelmsen ASA ("WW ASA"), Wallenius Wilhelmsen Logistics Americas LLC ("WWL

15  America"), Wallenius Lines AB ("Wallenius"), Compañía Sud Americana De Vapores S.A.

16  ("CSAV"), Toyofuji Shipping Co., Ltd. ("Toyofuji") and Nissan Motor Car Carrier Co., Ltd.

17  ("Nissan") (all as defined below, and collectively the "Defendants"), and unnamed co-

18  conspirators, providers of Vehicle Carrier Services (defined below) globally and in the United

19  States, for engaging in at least a five-year-long conspiracy to fix, raise, maintain and/or stabilize

20  prices, and allocate the market and customers in the United States for Vehicle Carrier Services.

21  2.    "Vehicle Carriers" transport large numbers of cars, trucks, or other automotive

22  vehicles including agriculture and construction equipment (collectively "Vehicles") across large

23  bodies of water using specialized cargo ships known as Roll On/Roll Off vessels ("RoRos"). As

24  used herein, "Vehicle Carrier Services" refers to the paid ocean transportation of Vehicles by

25  RoRo.

26  3.    Plaintiffs seek to represent all persons and entities in the United States who

27  indirectly purchased from any Defendant or any current or former subsidiary or affiliate thereof,

28  or any co-conspirator, Vehicle Carrier Services for personal use and not for resale, incorporated

1     into the price of a new Vehicle purchased or leased during the period from and including January

2     2008 through such time as the anticompetitive effects of Defendants' conduct ceased (the "Class

3     Period").

4         4.        The Defendants provide, market, and/or sell Vehicle Carrier Services throughout

5     the United States.

6         5.        The Defendants, and their co-conspirators (as yet unknown), agreed, combined,

7     and conspired to fix, raise, maintain and/or stabilize prices and allocate the market and customers

8     in the United States for Vehicle Carrier Services.

9         6.        Competition authorities in the United States, the European Union, Canada and

10    Japan have been investigating a possible global cartel among Vehicle Carriers since at least

11    September 2012. Both the United States Department of Justice's Antitrust Division ("DOJ") and

12    Canada's Competition Bureau ("CCB") are investigating unlawful, anticompetitive conduct in

13    the market for ocean shipping of cars, trucks, construction equipment and other products. The

14    Japanese Fair Trade Commission ("JFTC") and European Commission Competition Authority

15    ("EC") have also conducted coordinated dawn raids at the Tokyo and European offices of several

16    of the Defendants.

17        7.        Defendants and their co-conspirators participated in a combination and conspiracy

18    to suppress and eliminate competition in the Vehicle Carrier Services market by agreeing to fix,

19    stabilize and maintain the prices of, Vehicle Carrier Services sold to Vehicle manufacturers and

20    others in the United States. The combination and conspiracy engaged in by the Defendants and

21    their co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce

22    in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, state antitrust, unfair competition, and

23    consumer protection laws and the common law of unjust enrichment.

24        8.        As a direct result of the anticompetitive and unlawful conduct alleged herein,

25    Plaintiffs and the Classes paid artificially inflated prices for Vehicle Carrier Services

26    incorporated into the price of a new Vehicle purchased or leased during the Class Period, and

27    have thereby suffered antitrust injury to their business or property.

28

**CLASS ACTION COMPLAINT**                2

## II.    JURISDICTION AND VENUE

9.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs also allege claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and the common law of unjust enrichment, and seek to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws and common law. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

10.    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some of the Defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

11.    Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

12.    This Court has in personam jurisdiction over the Defendants because each, either directly or through the ownership and/or control of its subsidiaries, inter alia: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed Vehicle Carrier Services throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct,

1    substantial, reasonably foreseeable and intended effect of causing injury to, the business or

2    property of persons and entities residing in, located in, or doing business throughout the United

3    States, including in this District. The Defendants also conduct business throughout the United

4    States, including in this District, and they have purposefully availed themselves of the laws of

5    the United States.

6         13.     The Defendants engaged in conduct both inside and outside of the United States

7    that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects

8    upon interstate commerce within the United States.

9         14.     The activities of the Defendants and their co-conspirators were within the flow of,

10    were intended to, and did have, a substantial effect on interstate commerce of the United States.

11    The Defendants' Vehicle Carrier Services are sold in the flow of interstate commerce.

12        15.     Vehicles, the prices of which include Vehicle Carrier Services, transported from

13    abroad by the Defendants and sold for use within the United States are goods brought into the

14    United States for sale, and therefore constitute import commerce. To the extent any such

15    vehicles and the related Vehicle Carrier Services are purchased in the United States, and such

16    vehicles or Vehicle Carrier Services do not constitute import commerce, the Defendants'

17    unlawful activities with respect thereto, as more fully alleged herein during the Class Period,

18    had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States

19    commerce. The anticompetitive conduct, and its effect on United States commerce described

20    herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United

21    States.

22        16.     By reason of the unlawful activities hereinafter alleged, Defendants substantially

23    affected commerce throughout the United States, causing injury to Plaintiffs and members of the

24    Classes. The Defendants, directly and through their agents, engaged in activities affecting all

25    states, to fix, raise, maintain and/or stabilize prices, and allocate the market and customers in the

26    United States for Vehicle Carrier Services, which conspiracy unreasonably restrained trade and

27    adversely affected the market for Vehicle Carrier Services.

28

**CLASS ACTION COMPLAINT**                               4

1    17.    The Defendants' conspiracy and unlawful conduct described herein adversely

2    affected persons and entities in the United States who purchased vehicles for personal use and

3    not for resale, including Plaintiffs and the members of the Classes.

### III.    PARTIES

**A.    Plaintiffs**

6    18.    Plaintiff Joan MacQuarrie is a California resident who purchased Vehicle Carrier

7    Services indirectly from one or more Defendants.

8    19.    Plaintiff Brenda Keegan is a California resident who purchased Vehicle Carrier

9    Services indirectly from one or more Defendants.

**B.    Defendants**

11    20.    Defendant NYK Line is a Japanese company. NYK Line – directly and/or

12    through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or

13    sold Vehicle Carrier Services throughout the United States, including in this District, during the

14    Class Period.

15    21.    Defendant NYK America is a wholly owned subsidiary of NYK Line and a

16    resident of New Jersey. NYK America provided, marketed and/or sold Vehicle Carrier Services

17    throughout the United States, including in this District, during the Class Period.

18    22.    Defendant MOL is a Japanese company. MOL – directly and/or through its

19    subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle

20    Carrier Services throughout the United States, including in this District, during the Class Period.

21    23.    Defendant "K" Line is a Japanese company. "K" Line – directly and/or through

22    its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold

23    Vehicle Carrier Services throughout the United States, including in this District, during the Class

24    Period.

25    24.    Defendant "K" Line America is a wholly owned subsidiary of "K" Line and a

26    resident of Virginia. "K" Line America provided, marketed and/or sold Vehicle Carrier Services

27    throughout the United States, including in this District, during the Class Period.

28

**CLASS ACTION COMPLAINT**                                                                    5

1    25.    Defendant WW Holding is a Norwegian Company. WW Holding– directly

2  and/or through its subsidiaries, which it wholly owned and/or controlled – provided, marketed

3  and/or sold Vehicle Carrier Services throughout the United States, including in this District,

4  during the Class Period.

5    26.    Defendant WW ASA is a Norwegian company. WW ASA – directly and/or

6  through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or

7  sold Vehicle Carrier Services throughout the United States, including in this District, during the

8  Class Period.

9    27.    Defendant EUKOR is a South Korean company. EUKOR – directly and/or

10  through its subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or

11  sold Vehicle Carrier Services throughout the United States, including in this District, during the

12  Class Period.

13    28.    Defendant WWL is a Norwegian company. WWL – directly and/or through its

14  subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle

15  Carrier Services throughout the United States, including in this District, during the Class Period.

16    29.    Defendant WWL America is a wholly owned subsidiary of WWL and a resident

17  of Florida. WWL America provided, marketed and/or sold Vehicle Carrier Services throughout

18  the United States, including in this District, during the Class Period.

19    30.    Defendant Wallenius Lines AB is a Swedish Company. Wallenius Lines AB

20  WWL – directly and/or through its subsidiaries, which it wholly owned and/or controlled –

21  provided, marketed and/or sold Vehicle Carrier Services throughout the United States, including

22  in this District, during the Class Period.

23    31.    Defendant CSAV is a Chilean company. CSAV – directly and/or through its

24  subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle

25  Carrier Services throughout the United States, including in this District, during the Class Period.

26    32.    Defendant Toyofuji is a Japanese company. Toyofuji – directly and/or through its

27  subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle

28  Carrier Services throughout the United States, including in this District, during the Class Period.

**CLASS ACTION COMPLAINT**                                                                 6

1      33.    Defendant Nissan is a Japanese company. Nissan – directly and/or through its

2 subsidiaries, which it wholly owned and/or controlled – provided, marketed and/or sold Vehicle

3 Carrier Services throughout the United States, including in this District, during the Class Period.

4            **IV.    AGENTS AND CO-CONSPIRATORS**

5      34.    Each Defendant acted as the principal of or agent for the other Defendants with

6 respect to the acts, violations, and common course of conduct alleged herein.

7      35.    Various persons, partnerships, sole proprietors, firms, corporations and

8 individuals not named as Defendants in this lawsuit, and individuals, the identities of which are

9 presently unknown, have participated as co-conspirators with Defendants in the offenses alleged

10 in this Complaint, and have performed acts and made statements in furtherance of the conspiracy

11 or in furtherance of the anticompetitive conduct.

12      36.    Whenever in this Complaint reference is made to any act, deed or transaction of

13 any corporation or limited liability entity, the allegation means that the corporation or limited

14 liability entity engaged in the act, deed or transaction by or through its officers, directors, agents,

15 employees or representatives while they were actively engaged in the management, direction,

16 control or transaction of the corporation's or limited liability entity's business or affairs.

17            **V.    FACTUAL ALLEGATIONS**

18 **A.**    **The Vehicle Carrier Industry**

19      37.    A RoRo ship is a special type of ocean vessel that allows wheeled Vehicles to be

20 driven and parked on its decks for long voyages. These ships, also known as Vehicle Carriers,

21 have special ramps to permit easy access, high sides to protect the cargo during transport, and

22 numerous decks to allow storage of a large number and variety of Vehicles.

23      38.    There are different types of RoRo ships. A Pure Vehicle Carrier ("PCC")

24 transports only cars and a Pure Car and Truck Carrier ("PCTC") transports cars, trucks, and other

25 four wheeled vehicles. Although a RoRo ship cannot transport containers, some hybrid

26 RoRo/container ships have been built.

27

28

**CLASS ACTION COMPLAINT**                       7



WW ASA's MV Tønsberg RoRo vessel

39.     Vehicle Carriers are a defined submarket of the larger bulk shipping market. World trade exploded after the proliferation of container ships. These ships allow a large range of goods, such as food and consumer electronics, to be packed in standard-sized containers for quick loading and delivery. However, cars, trucks, and heavy machinery, due to their larger and more irregular shapes, are not easily shipped in containers. Furthermore, there are no reasonable substitutes for the shipment of Vehicles by sea because any alternatives, such as air transportation, would be too costly.

40.     For new Vehicles, the original equipment manufacturers ("OEMs") – mostly large automotive, construction and agricultural manufacturers – purchase Vehicle Carrier Services directly from the Defendants. The OEMs and Vehicle Carriers generally enter into long-term shipping arrangements.

41.     Defendants and their co-conspirators provided Vehicle Carrier Services to OEMs for transportation of Vehicles sold in the United States and elsewhere. Defendants and their co-conspirators provided Vehicle Carrier Services (a) in the United States for the transportation of Vehicles manufactured elsewhere for export to and sale in the United States, and (b) in other countries for the transportation of Vehicles manufactured elsewhere for export to and sale in the United States.

1    42.    Plaintiffs and members of the proposed Classes purchased Vehicle Carrier

2  Services indirectly from one or more of the Defendants by virtue of their purchase or lease of a

3  new Vehicle during the Class Period.

4    43.    The annual market for Vehicle Carrier Services in the United States is nearly a

5  billion dollars. Specifically, for the transportation of new, imported motor vehicles

6  manufactured elsewhere for export to and sale in the United States, the market is between $600

7  and $800 million each year.

8  **B.    The Market Structure and Characteristics Support the Existence of a Conspiracy**

9    44.    The structure and other characteristics of the market for Vehicle Carrier Services

10  are conducive to a price-fixing agreement and have made collusion particularly attractive.

11  Specifically, the Vehicle Carrier Services market: (1) has high barriers to entry; (2) has

12  inelasticity of demand; (3) is highly concentrated; (4) is highly homogenized; (5) is rife with

13  opportunities to meet and conspire; and (6) has excess capacity.

14    **1.    The Market for Vehicle Carrier Services Has High Barriers to Entry**

15    45.    A collusive arrangement that raises product prices above competitive levels

16  would, under basic economic principles, attract new entrants seeking to benefit from the supra-

17  competitive pricing. When, however, there are significant barriers to entry, new entrants are

18  much less likely to enter the market. Thus, barriers to entry help facilitate the formation and

19  maintenance of a cartel.

20    46.    There are substantial barriers that preclude, reduce, or make more difficult entry

21  into the Vehicle Carrier Services market. Transporting Vehicles without damage across oceans

22  requires highly specialized and sophisticated equipment, resources, and industry knowledge.

23  The ships that make such transport possible are highly specialized. Such ships are purposely

24  built to an unusual design that includes high sides, multiple interior decks, and no container

25  cargo space. These characteristics restrict the use of the ships to the Vehicle Carrier Services

26  market. A new entrant into the business would face costly and lengthy start-up costs, including

27  multi-million dollar costs associated with manufacturing or acquiring a fleet of Vehicle Carriers

28

**CLASS ACTION COMPLAINT**                                                    9

1 and other equipment, energy, transportation, distribution infrastructure and skilled labor. It is

2 estimated that the capital cost of a RoRo is at least $95 million. [1]

3     47.    Additionally, the nature of the Vehicle Carrier Services industry requires the

4 establishment of a network of routes to serve a particular set of customers with whom

5 Defendants establish long-term relationships. The existence of these established routes and long-

6 term contracts increases switching costs for shippers and present an additional barrier to entry.

7     48.    The Vehicle Carrier Services market also involves economies of scale and scope,

8 which present additional barriers to entry.

9     (a)    Economies of scale exist where firms can lower the average cost per unit through

10 increased production, since fixed costs are shared over a larger number of units. Fuel accounts

11 for nearly 50% of all operational costs for Vehicle Carriers. However Vehicle Carriers are less

12 sensitive to fuel prices than other modes of transportation, providing opportunities to exploit

13 economies of scale. As fuel prices increased in the last 5-10 years, market participants were

14 incentivized to increase the average size of vessels. This reflects the presence of economies of

15 scale, because fuel costs did not increase proportionally as vessel size grew.

16     (b)    Economies of scope exist where firms achieve a cost advantage from providing a

17 wide variety of products or services. The major Vehicle Carriers, including Defendants, own

18 related shipping or transportation businesses they can utilize to provide additional services to

19 clients, such as the operation of dedicated shipping terminals and inland transportation of

20 Vehicles.

21     **2.    There is Inelasticity of Demand for Vehicle Carrier Services**

22     49.    "Elasticity" is a term used to describe the sensitivity of supply and demand to

23 changes in one or the other. For example, demand is said to be "inelastic" if an increase in the

24 price of a product results in only a small decline in the quantity sold of that product, if any. In

25 other words, customers have nowhere to turn for alternative, cheaper products of similar quality,

26 and so continue to purchase despite a price increase.

27
[1] Asaf Ashar, *Marine Highways' New Direction*, J. OF COM. 38 (Nov. 21, 2011).

28

**CLASS ACTION COMPLAINT**                                            10

1    50.    For a cartel to profit from raising prices above competitive levels, demand must

2  be relatively inelastic at competitive prices. Otherwise, increased prices would result in

3  declining sales, revenues, and profits as customers purchased substitute products or declined to

4  buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing

5  producers to raise their prices without triggering customer substitution and lost sales revenue.

6    51.    Demand for Vehicle Carrier Services is highly inelastic. This is because there are

7  no close substitutes for this service. A Vehicle Carrier is the only ocean vessel that has the

8  carrying capacity for a large number of Vehicles. A Vehicle Carrier is also more versatile than

9  other substitutes because it is built to adjust to various shapes and sizes. Because a container

10  ship functions based on the uniformity of the cargo—everything must fit within the standardized

11  containers—it is not conducive to transporting larger and more irregularly-shaped goods, such as

12  cars, trucks, and agricultural and construction equipment. Foreign OEMs must employ Vehicle

13  Carrier Services to facilitate the sale of their Vehicles in North America, regardless of whether

14  prices are kept at supra-competitive levels. There is simply no alternative for high volume

15  transoceanic transportation of Vehicles to the United States.

16    **3.    The Market for Vehicle Carriers Is Highly Concentrated**

17    52.    A concentrated market is more susceptible to collusion and other anticompetitive

18  practices.

19    53.    The Defendants dominate the global Vehicle Carrier Services market. Defendants

20  controlled over 70 percent of the Vehicle Carrier Services market during the Class Period.[2]

21

22

23

24

25

26

27

28  [2] Source: Hesnes Shipping AS, The Car Carrier Market 2010.

**CLASS ACTION COMPLAINT**                                                                    11



# Defendants' Market Share in Global Vehicle Carriers

Others
29.3%

Defendants
70.7%

*** Based on Capacity of Vessels**

Source: Hesnes Shipping AS, The Car Carrier Market 2010

### 4.   The Services Provided by Vehicle Carriers Are Highly Homogeneous

54.   Vehicle Carrier Services are a commodity-like service, which is interchangeable among Vehicle Carriers.

55.   When products or services offered by different suppliers are viewed as interchangeable by purchasers, it is easier for suppliers to unlawfully agree on the price for the product or service in question, and it is easier to effectively police the collusively set prices. This makes it easier to form and sustain an unlawful cartel.

56.   Vehicle Carrier Services are qualitatively the same across different carriers. Each Defendant has the capability to provide the same or similar Vehicle Carrier Services and Vehicle Carrier Service customers make purchase decisions based primarily on price. The core considerations for a purchaser will be where, when, and how much. This commoditization and

**CLASS ACTION COMPLAINT**                                                                    12

1 interchangeability of Vehicle Carrier Services facilitated Defendants' conspiracy by making
2 coordination on price much simpler than if Defendants had numerous distinct products or
3 services with varying features.

4     57.     As the graph above demonstrates, pricing for Vehicle Carrier Services (per
5 vehicle) remained relatively flat from 2001 to 2006. In 2001, the per vehicle price was
6 approximately $301.30, while in 2006 the per vehicle price was $305.79, an increase of less than
7 2%.

8     58.     Beginning just prior to the Class Period, the price of Vehicle Carrier Services has
9 increased by 23%.

10     59.     The increase in the price of Vehicle Carrier Services far outpaced any increase in
11 demand during the Class Period.

12     60.     In the absence of an unlawful price-fixing conspiracy, according to the laws of
13 supply and demand, prices would not increase at a rate greater than the rate of demand, yet that is
14 exactly what happened in the Vehicle Carrier Services market during the Class Period.

15     **5.**     **Defendants Had Ample Opportunities to Meet and Conspire**

16     61.     Defendants attended industry events where they had the opportunity to meet, have
17 improper discussions under the guise of legitimate business contacts, and perform acts necessary
18 for the operation and furtherance of the conspiracy. For example, there are frequent trade shows
19 for shipping companies around the globe, such as the Breakbulk conferences[3] and the biennial
20 RoRo trade show in Europe.

21     62.     Defendants "K" Line and NYK Line are also members of the Transpacific
22 Stabilization Agreement (TSA), which consists of "major ocean container shipping lines that
23
24

25 [3] Breakbulk Magazine provides its readers with project cargo, heavy lift and RoRo logistics
intelligence including news, trending, data and metrics. Breakbulk Magazine's global events
26 include Breakbulk Transportation Conferences & Exhibitions, which "are the largest
international events focused on traditional breakbulk logistics, heavy-lift transportation and
27 project cargo trade issues." The conferences provide opportunities to "meet with specialized
cargo carriers, ports, terminals, freight forwarders, heavy equipment transportation companies
28 and packers." Source: http://www.breakbulk.com/breakbulk-global-events/.

1  carry cargo from Asia to ports and inland points in the U.S." According to the TSA website, it
2  provides a forum for its members to, inter alia,:

3       •     Meet, exchange market information, and jointly conduct market research; and
4       •     Develop voluntary, non-binding guidelines for rates and charges.

5  *See* About TSA at http://www.tsacarriers.org/about.html. TSA meetings, which are ostensibly
6  held to set rates for container shipping, provide an opportunity for its members, including
7  Defendants "K" Line and NYK Line, to discuss Vehicle shipping markets, routes, and rates and
8  engage in illegal price fixing, customer allocation and bid rigging conspiracies. In fact,
9  Defendants "K" Line, NYK Line, and MOL have already been fined by the DOJ, JFTC, EC, the
10  CCB, and various other antitrust organizations for their roles in a conspiracy to fix air freight
11  forwarding fees across several continents.

12       63.    Additionally, Defendants routinely enter into joint "vessel sharing" or "space
13  charter" agreements. These agreements allow shipping lines to reserve amounts of space or
14  "slots" on one another's ships. Vessel sharing agreements are very common in the international
15  maritime shipping industry, comprising approximately 79% of all agreements registered with the
16  Federal Maritime Commission ("FMC"). While allegedly entered into for space charter
17  purposes, these agreements provide an opportunity for Defendants to discuss Vehicle shipping
18  markets, routes, and rates and engage in illegal price fixing and bid rigging conspiracies.

19       64.    The very nature of the negotiations between Vehicle Carriers and OEMs also
20  facilitates collusion among Vehicle Carriers. Soren Tousgaard Jensen, Managing Director of
21  WWL Russia has explained, using Japan as an example,

22       [T]he manufacturers there, in order to get the right frequency, the right market coverage
23       and the right ports, have often called in two, three, sometimes four shipping lines around
         the table and said that they would spread their volumes between them, depending on how
24       competitive they were. The shipping lines have to work together to find ways of not
         having ships in the same position and ways of having one line deliver at the beginning of
25       the month and another mid-month.[4]

26  ――――――――――――――――――
27  [4] *Profitability the key issue for RoRo carriers*, AUTO. SUPPLY CHAIN (Oct. 4, 2012), *available at*
28  http://www.automotivesupplychain.org/features/133/77/Profitability-the-key-issue-for-RoRo-
     carriers/

**CLASS ACTION COMPLAINT**                                                                  14

1

### 6. The Market for Vehicle Carrier Services Has Excess Capacity

2    65.    Excess capacity occurs when a market is capable of supplying more of a product
3  or service than is needed. This often means that demand is less than the output the market has
4  the capability to produce. Academic literature suggests, and courts have found, that the presence
5  of excess capacity can facilitate collusion.[5]

6    66.    Significantly, the market for Vehicle Carrier Services has operated in a state of
7  excess capacity since 2008. The tables below demonstrate that while the capacity of Vehicle
8  Carriers to transport Vehicles has increased since 2007, the utilization rate of Vehicle Carriers
9  has fallen, and remained stable at a rate of approximately 83% since 2010.

10  / / /

11  / / /

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  [5] *See* Benoit, J. and V. Krishna, *Dynamic Duopoly: Prices and Quantities*, REV. OF ECON.
    STUDIES, 54, 23-36 (1987); Davidson, Carl & Raymond Deneckere, *Excess Capacity and*
27  *Collusion*, INT'L ECON. REV., 31(3), 521-41 (1990); *In re High Fructose Corn Syrup Antitrust*
    *Litig.*, 295 F.3d 651, 657 (7th Cir. 2002)

28

**CLASS ACTION COMPLAINT**                                                                              15



Source: The Car Carrier Market, 2004-2012; Hesnes Shipping AS



Source: The Platou Report 2004-2012

**CLASS ACTION COMPLAINT** 16

67.     In the face of such excess capacity, Defendants agreed to reduce capacity and increase prices through coordinated "slow steaming." Slow steaming involves lowering a carrier's speed to conserve on fuel costs. NYK Line, for example, has used slow steaming for container ships and Vehicle Carriers since 2010. By elongating the time it takes to make ocean crossings, Vehicle Carriers are able to use more ships at the same time, thereby decreasing capacity and creating artificial capacity shortages.

68.     In 2011, the FMC opened an investigation into slow steaming after reportedly receiving complaints from shippers.[6] Roy Pearson, deputy director of the FMC's Bureau of Trade Analysis, told the FMC that academic studies of slow steaming showed carriers could save $3 billion per year in fuel costs.[7] As part of its investigation, the FMC issued a Notice of Inquiry soliciting public comment on the impact of slow steaming on United States ocean liner commerce. In response, the National Industrial Transportation League, an association representing shippers, commented that despite the cost savings generated by slow steaming, many League members had actually "experienced increased shipping costs . . . ."[8]

69.     Defendants' practices of slow steaming and vessel sharing represent concerted, collusive efforts to reduce output in order to increase prices despite overcapacity in the Vehicle Carrier Services market. By acting in concert pursuant to their conspiracy, Defendants decreased the availability of Vehicle Carrier Services in the market, which caused prices to rise artificially during the Class Period.

70.     Defendants' practices of slow steaming and vessel sharing represent concerted, collusive efforts to reduce output in order to increase prices despite overcapacity in the Vehicle Carrier Services market. By acting in concert pursuant to their conspiracy, Defendants decreased

---

[6] Specifically, the FMC is investigating the "economic effects" of slow steaming to determine whether it is causing "unreasonable constraints" on the international supply chain.

[7] R.G. Edmonson, *FMC to Review Slow Steaming*, J. OF COM. (Jan. 7, 2011), *available at* http://www.joc.com/maritime-news/fmc-review-slow-steaming_20110107.html.

[8] Comments of The National Industrial Transportation League to the FMC's Notice of Inquiry Solicitation of Views on the Impact of Slow Steaming (Apr. 5, 2011), *available at* http://www.fmc.gov/noi-slow_steaming/.

1  the availability of Vehicle Carrier Services in the market, which caused prices to rise artificially

2  during the Class Period.

3  **C.**   **There Is Strong Evidence of Collusion in the Vehicle Carrier Services Market**

4       **1.**   **Defendants Raised Prices at a Rate that Far Exceeded Demand**

5       71.   Prices for Vehicle Carrier Services have been generally increasing since 2006.



**Per Vehicle Price of Carrier Services**

15       **2.**   **Defendants Previously Colluded in Different Markets**

16       72.   The affiliates and subsidiaries of certain Defendants have recently pled guilty and

17  agreed to pay millions of dollars in fines for violating the antitrust laws in other markets.

18       73.   In 2007, the DOJ and EC launched an investigation into price fixing among

19  international air freight forwarders, including certain affiliates and subsidiaries of Defendants.

20  On October 10 of that year, the EC launched unannounced inspections at the premises of various

21  international air freight forwarding companies with the help and coordination of various other

22  nations' antitrust enforcement groups.

23       74.   On March 19, 2009, the JFTC ordered 12 companies to pay $94.7 million in fines

24  for violations of the Japanese Antimonopoly Act ("AMA"). Included among the 12 companies

25  were "K" Line Logistics, Ltd., a subsidiary of Defendant "K" Line, Yusen Air & Sea Services

26  Co., Ltd., a subsidiary of Defendant NYK Line, and MOL Logistics (Japan) Co., Ltd., a

27  subsidiary of Defendant MOL.

28

**CLASS ACTION COMPLAINT**                                                                18

1    75.    The JFTC concluded that the companies had, over a five-year period, met and
2 agreed to, among other things, the amount of fuel surcharges, security charges, and explosive
3 inspection charges that they would charge their international air freight forwarding customers.
4 The agreements were, according to the JFTC, negotiated at meetings of the Japan Aircargo
5 Forwarders Association.

6    76.    Yusen Logistics Co., Ltd. filed a complaint in April 2009 requesting a hearing to
7 review the JFTC's orders, and the Tokyo High Court upheld the orders on November 9, 2012.

8    77.    On September 30, 2011, MOL Logistics (Japan) Co., Ltd. pleaded guilty to a
9 Criminal Information in the United States District Court for the District of Columbia charging it
10 with Sherman Act violations related to price fixing. MOL is one of 16 companies that agreed to
11 plead guilty or have pled guilty as a result of the DOJ's freight forwarding investigation, which
12 has resulted in more than $120 million in criminal fines to date. According to the Criminal
13 Information filed against MOL Logistics (Japan) Co. Ltd., it and its co-conspirators
14 accomplished their conspiracy by:

15        (a)    Participating in meetings, conversations, and communications to discuss
16    certain components of freight forwarding service fees to be charged on air cargo
17    shipments from Japan to the United States;

18        (b)    Agreeing, during those meetings, conversations, and communications, on
19    one or more components of the freight forwarding service fees to be charged on air cargo
20    shipments from Japan to the United States;

21        (c)    Levying freight forwarding service fees, and accepting payments for
22    services provided for, air cargo shipments from Japan to the United States, in accordance
23    with the agreements reached; and

24        (d)    Engaging in meetings, conversations, and communications for the purpose
25    of monitoring and enforcing adherence to the agreed-upon freight forwarding service
26    fees.

27    78.    On March 28, 2012, the EC fined 14 international groups of companies, including
28 Yusen Shenda Air & Sea Service (Shanghai) Ltd., a subsidiary of Defendant NYK Line, a total

**CLASS ACTION COMPLAINT**                                                      19

1  of $219 million for their participation in the air cargo cartels and violating European Union
2  antitrust rules. According to the EC, "[i]n four distinct cartels, the cartelists established and
3  coordinated four different surcharges and charging mechanisms, which are component elements
4  of the final price billed to customers for these services."

5      79.    On March 8, 2013, the DOJ announced that "K" Line Logistics, Ltd. and Yusen
6  Logistics Co., Ltd., a subsidiary of Defendant NYK Line, agreed to pay criminal fines of
7  $3,507,246 and $15,428,207, respectively, for their roles in a conspiracy to fix certain freight-
8  forwarding fees for cargo shipped by air from the United States to Japan. As with MOL
9  Logistics (Japan) Co. Ltd., "K" Line Logistics, Ltd. and Yusen Logistics Co., Ltd. pleaded guilty
10 to meeting with co-conspirators, agreeing to what freight forwarding service fees should be
11 charged on air cargo shipments, and actually levying those fees on its customers from about
12 September 2002 until at least November 2007.

13      3.    **Competition Authorities Have Launched and Coordinated a Global**
             **Government Investigation into Price-Fixing in the Market for Vehicle**
14           **Carrier Services**

15      80.    United States, Canadian, Japanese, and European competition authorities have
16 initiated a global, coordinated antitrust investigation concerning the unlawful conspiracy alleged
17 herein. The investigation originated in the United States after an American shipping company
18 complained of Defendants' conspiracy to the DOJ.

19      81.    On September 6, 2012, the JFTC executed raids at the Japanese offices of NYK
20 Line, MOL, "K" Line, WWL, and EUKOR as part of an investigation into anticompetitive
21 conduct related to Vehicle Carrier Services. Defendant "K" Line confirmed in a statement to its
22 shareholders, as part of its FY2012 2nd Quarter report, that it was visited by a JFTC
23 investigation team on suspicion of violating Japan's Antimonopoly Act in terms of transporting
24 cars and wheeled construction machinery. Defendants NYK Line and MOL further confirmed
25 that their Japanese offices had been searched.

26      82.    The Japan Daily Press reported that a JFTC official said the cartel "was formed to
27 deal with the rising fuel charges, personnel costs and shipbuilding expenses." According to the
28

**CLASS ACTION COMPLAINT**                                                    20

1   article, "apparently some companies formed smaller groups for specific shipping routes, such as
2   for Europe, North America and other Asian nations" and the three major Japanese firms – NYK
3   Line, "K" Line and MOL – played "a big role in this setup." "The scrupulous companies were
4   controlling the competition and manipulating transport orders from carmakers."

5       83.    Defendant WW ASA confirmed in a press release on September 7, 2012 that it
6   had received a request for information from the CCB, and that (i) its subsidiaries, WWL and
7   EUKOR had been visited by the JFTC as part of an investigation related to the Japan
8   Antimonopoly Act; (ii) WWL had received requests for information from the EC, DOJ and
9   CCB; and (iii) EUKOR had received requests for information from the DOJ and the CCB.
10  According to Defendant WW ASA, the purpose of the requests made to WWL and EUKOR "is
11  to ascertain whether there is evidence of any infringement of competition law related to possible
12  price cooperation between carriers and allocation of customers."

13      84.    On the same day, in coordination with United States and Japanese authorities, the
14  EC carried out additional unannounced inspections at the European offices of several maritime
15  shipping companies suspected of operating a cartel. According to the EC, it carried out the
16  inspections in coordination with United States and Japanese competition authorities, and "ha[d]
17  reasons to believe that the companies concerned may have violated Article 101 of the [Treaty on
18  the functioning of the European Union] TFEU prohibiting cartels and restrictive business
19  practices."

20      85.    The Japanese Business Daily reported that the shipping affiliates of Toyota Motor
21  Corp. and Nissan Motor Co. were also among the companies raided by the JFTC. Toyota Motor
22  Corp.'s shipping affiliate is Defendant ToyoFuji, and Nissan Motor Co.'s is Defendant Nissan.

23      86.    Defendant CSAV issued a statement in mid-September revealing that its
24  employees had received subpoenas from the DOJ and CCB in connection with the suspected
25  Vehicle Carrier Services cartel. Defendant CSAV stated, "[t]he investigation seeks to inquire
26  into the existence of antitrust law violations related to cooperation agreements on prices and
27  allocation of clients between car carriers."

28

1    87.    The DOJ, through spokesperson Gina Talamona, confirmed to the media shortly

2  after the September 2012 raids, "We are coordinating with the European Commission, the

3  Japanese Fair Trade Commission and other international competition authorities." Ms.

4  Talamona explained that "[t]he antitrust division is investigating the possibility of

5  anticompetitive practices involving the ocean shipping of cars, trucks, construction equipment,

6  and other products."

7                          **VI.    CLASS ACTION ALLEGATIONS**

8    88.    Plaintiffs bring this action on behalf of themselves and as a class action under

9  Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive

10  relief on behalf of the following class (the "Nationwide Class"):

11       All persons and entities in the United States who indirectly purchased from any

12       Defendant or any current or former subsidiary or affiliate thereof, or any co-

13       conspirator, Vehicle Carrier Services for personal use and not for resale,

14       incorporated into the price of a new Vehicle purchased or leased during the Class

15       Period.

16

17    89.    Plaintiffs also bring this action on behalf of themselves and as a class action under

18  Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the

19  common law of unjust enrichment and the state antitrust, unfair competition, and consumer

20  protection laws of the states listed below (the "Plaintiffs' States") on behalf of the following

21  class (the "Damages Class"):

22       All persons and entities in the Plaintiffs' States who indirectly purchased, from any
         Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator,
         Vehicle Carrier Services for personal use and not for resale, incorporated into the price
23       of a new Vehicle purchased or leased during the Class Period.

24    90.    The Nationwide Class and the Damages Class are referred to herein as the

25  "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and

26  affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal

27  government, states and their subdivisions, agencies and instrumentalities, and persons who

28  purchased Vehicle Carrier Services directly.

**CLASS ACTION COMPLAINT**                                                          22

1   91.    While Plaintiffs do not know the exact number of the members of the Classes,
2   Plaintiffs believe there are (at least) thousands of members in each Class.

3   92.    Common questions of law and fact exist as to all members of the Classes. This is
4   particularly true given the nature of Defendants' conspiracy, which was generally applicable to
5   all the members of both Classes, thereby making appropriate relief with respect to the Classes as
6   a whole. Such questions of law and fact common to the Classes include, but are not limited to:

7       (a)    Whether the Defendants and their co-conspirators engaged in a combination and
8       conspiracy among themselves to fix, raise, maintain or stabilize the prices of Vehicle
9       Carrier Services sold in the United States;

10      (b)    The identity of the participants of the alleged conspiracy;

11      (c)    The duration of the alleged conspiracy and the acts carried out by Defendants and
12      their co-conspirators in furtherance of the conspiracy;

13      (d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First
14      Claim for Relief;

15      (e)    Whether the alleged conspiracy violated state antitrust and unfair competition
16      law, and/or state consumer protection law, as alleged in the Second and Third Claims for
17      Relief;

18      (f)    Whether the Defendants unjustly enriched themselves to the detriment of the
19      Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members
20      of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the
21      Fourth Claim for Relief;

22      (g)    Whether the conduct of the Defendants and their co-conspirators, as alleged in
23      this Complaint, caused injury to the business or property of Plaintiffs and the members
24      of the Classes;

25      (h)    The effect of the alleged conspiracy on the prices of Vehicle Carrier Services sold
26      in the United States during the Class Period;

27      (i)    Whether Plaintiffs and members of the Classes had any reason to know or suspect
28      the conspiracy, or any means to discover the conspiracy;

**CLASS ACTION COMPLAINT**                                                                    23

1    (j)     Whether the Defendants and their co-conspirators fraudulently concealed the

2    conspiracy's existence from the Plaintiffs and the members of the Classes;

3    (k)     The appropriate injunctive and related equitable relief for the Nationwide Class;

4    and

5    (l)     The appropriate class-wide measure of damages for the Damages Class.

6    93.    Plaintiffs' claims are typical of the claims of the members of the Classes, and

7    Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all

8    members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid

9    artificially inflated prices for Vehicle Carrier Services purchased indirectly from the Defendants

10   and/or their co-conspirators.

11   94.    Plaintiffs' claims arise out of the same common course of conduct giving rise to

12   the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not

13   antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel

14   who are competent and experienced in the prosecution of antitrust and class action litigation.

15   95.    The questions of law and fact common to the members of the Classes

16   predominate over any questions affecting only individual members, including legal and factual

17   issues relating to liability and damages.

18   96.    Class action treatment is a superior method for the fair and efficient adjudication

19   of the controversy, in that, among other things, such treatment will permit a large number of

20   similarly situated persons to prosecute their common claims in a single forum simultaneously,

21   efficiently and without the unnecessary duplication of evidence, effort and expense that

22   numerous individual actions would engender. The benefits of proceeding through the class

23   mechanism, including providing injured persons or entities with a method for obtaining redress

24   for claims that it might not be practicable to pursue individually, substantially outweigh any

25   difficulties that may arise in management of this class action.

26   97.    The prosecution of separate actions by individual members of the Classes would

27   create a risk of inconsistent or varying adjudications, establishing incompatible standards of

28   conduct for Defendants.

**CLASS ACTION COMPLAINT**                                                                24

1        **VII.    PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**

2        98.    The Defendants' price-fixing conspiracy had the following effects, among others:

3        (a)    Price competition has been restrained or eliminated with respect to Vehicle

4        Carrier Services;

5        (b)    The prices of Vehicle Carrier Services have been fixed, raised, maintained, or

6        stabilized at artificially inflated levels;

7        (c)    Indirect purchasers of Vehicle Carrier Services have been deprived of free and

8        open competition;

9        (d)    Indirect purchasers of Vehicle Carrier Services paid artificially inflated prices.

10        99.    During the Class Period, Plaintiffs and the members of the Classes paid supra-

11       competitive prices for Vehicle Carrier Services. OEMs and automobile dealers passed on the

12       inflated charges to purchasers and lessees of new Vehicles. Those overcharges have unjustly

13       enriched Defendants.

14        100.    The market for Vehicle Carrier Services and the market for Vehicles are

15       inextricably linked and intertwined because the market for Vehicle Carrier Services exists to

16       serve the Vehicle market. Without the Vehicles, the Vehicle Carrier Services have little to no

17       value because they have no independent utility. Indeed, the demand for Vehicles creates the

18       demand for Vehicle Carrier Services.

19        101.    While even a monopolist would increase its prices when the cost of its inputs

20       increased, the economic necessity of passing through cost changes increases with the degree of

21       competition a firm faces. The OEM and dealer markets for new Vehicles are subject to vigorous

22       price competition. The OEMs and dealers have thin net margins, and are therefore at the mercy

23       of their input costs, such that increases in the price of Vehicle Carrier Services lead to

24       corresponding increases in prices for new Vehicles at the OEM and dealer levels. When

25       downstream distribution markets are highly competitive, as they are in the case of new Vehicles

26       shipped by Vehicle Carrier, overcharges are passed through to ultimate consumers, such as the

27       indirect-purchaser Plaintiffs and the members of the Classes.

28

**CLASS ACTION COMPLAINT**                                                                    25

1    102.    Hence, the inflated prices of Vehicle Carrier Services in new Vehicles resulting

2    from Defendants' price-fixing conspiracy have been passed on to Plaintiffs and the other

3    members of the Classes by OEMs and dealers.

4    103.    The purpose of the conspiratorial conduct of the Defendants and their co-

5    conspirators was to raise, fix, rig or stabilize the price of Vehicle Carrier Services and, as a direct

6    and foreseeable result, the price of new Vehicles shipped by Vehicle Carriers.

7    104.    Economists have developed techniques to isolate and understand the relationship

8    between one "explanatory" variable and a "dependent" variable in those cases when changes in

9    the dependent variable are explained by changes in a multitude of variables, even when all such

10   variables may be changing simultaneously.  That analysis - called regression analysis - is

11   commonly used in the real world and in litigation to determine the impact of a price increase on

12   one cost in a product (or service) that is an assemblage of costs.

13   105.    Regression analysis is one potential method by which to isolate and identify only

14   the impact of an increase in the price of Vehicle Carrier Services on prices for new purchased or

15   leased Vehicles even though such products contain a number of other inputs whose prices may

16   be changing over time.  A regression model can explain how variation in the price of Vehicle

17   Carrier Services affects changes in the price of new purchased or leased Vehicles.  In such

18   models, the price of Vehicle Carrier Services would be treated as an independent or explanatory

19   variable.  The model can isolate how changes in the price of Vehicle Carrier Services impact the

20   price of new Vehicles shipped by Vehicle Carrier while controlling for the impact of other price-

21   determining factors.

22   106.    The precise amount of the overcharge impacting the prices of new Vehicles

23   shipped by Vehicle Carrier can be measured and quantified.  Commonly used and well-accepted

24   economic models can be used to measure both the extent and the amount of the supra-

25   competitive charge passed-through the chain of distribution.  Thus, the economic harm to

26   Plaintiffs and the members of the Classes can be quantified.

27   107.    By reason of the alleged violations of the antitrust laws and other laws alleged

28   herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or

**CLASS ACTION COMPLAINT**                                                                26

1 property, having paid higher prices for Vehicle Carrier Services than they would have paid in the

2 absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have

3 suffered damages in an amount presently undetermined. This is an antitrust injury of the type

4 that the antitrust laws were meant to punish and prevent.

## VIII. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE

## STATUTE OF LIMITATIONS

### A. The Statute of Limitations Did Not Begin to Run Because The Plaintiffs Did Not and Could Not Discover Their Claims

108.    Plaintiffs repeat and re-allege the allegations set forth above.

109.    Plaintiffs and members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until shortly before the filing of this Complaint. Plaintiffs and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until September 6, 2012, the date the JFTC announced raids of certain Defendants' offices for their role in the criminal price-fixing conspiracy alleged herein.

110.    Plaintiffs and members of the Classes are consumers who had no direct contact or interaction with the Defendants, and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the September 6, 2012 raids alleged above.

111.    No information in the public domain was available to Plaintiffs and members of the Classes prior to the announced raids on September 6, 2012 that revealed sufficient information to suggest that the Defendants were involved in a criminal conspiracy to fix the prices charged for Vehicle Carrier Services. Plaintiffs and members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

1    112.   For these reasons, the statute of limitations as to Plaintiffs and the Classes' claims
2  did not begin to run, and has been tolled with respect to the claims that Plaintiffs and members of
3  the Classes have alleged in this Complaint.

4  **B.    Fraudulent Concealment Tolled the Statute of Limitations**

5    113.   In the alternative, application of the doctrine of fraudulent concealment tolled the
6  statute of limitations as to the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and
7  members of the Classes did not know and could not have known of the existence of the
8  conspiracy and unlawful combination alleged herein until September 6, 2012, at the earliest, the
9  date the JFTC announced raids of certain Defendants' offices for their role in the criminal price-
10 fixing conspiracy alleged herein.

11   114.   Before that time, Plaintiffs and members of the Classes were unaware of
12 Defendants' unlawful conduct, and did not know before then that they were paying supra-
13 competitive prices for Vehicle Carrier Services throughout the United States during the Class
14 Period. No information, actual or constructive, was ever made available to Plaintiffs and
15 members of the Classes that even hinted to Plaintiffs and the members of the Classes that they
16 were being injured by Defendants' unlawful conduct.

17   115.   The affirmative acts of the Defendants alleged herein, including acts in
18 furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that
19 precluded detection.

20   116.   By its very nature, the Defendants' anticompetitive conspiracy and unlawful
21 combinations were inherently self-concealing. Defendants met and communicated in secret and
22 agreed to keep the facts about their collusive conduct from being discovered by any member of
23 the public or by the OEMs and other direct purchasers with whom they did business.

24   118.   Plaintiffs and members of the Classes could not have discovered the alleged
25 combination or conspiracy at an earlier date by the exercise of reasonable diligence because of
26 the deceptive practices and techniques of secrecy employed by the Defendants and their co-
27 conspirators to avoid detection of, and fraudulently conceal, their conduct.

28

**CLASS ACTION COMPLAINT**                                                      28

1       118.    Because the alleged conspiracy was both self-concealing and affirmatively

2 concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no

3 knowledge of the alleged conspiracy, or of any facts or information that would have caused a

4 reasonably diligent person to investigate whether a conspiracy existed, until September 6, 2012,

5 when the JFTC announced raids of certain Defendants' offices for their role in the criminal

6 price-fixing conspiracy alleged herein.

7       119.    For these reasons, the statute of limitations applicable to Plaintiffs' and the

8 Classes' claims was tolled and did not begin to run until September 6, 2012.

9 **FIRST CLAIM FOR RELIEF**

10 **Violation of Section 1 of the Sherman Act**

11 **(on behalf of Plaintiffs and the Nationwide Class)**

12       120.    Plaintiffs repeat and re-allege the allegations set forth above.

13       121.    Defendants and unnamed conspirators entered into and engaged in a contract,

14 combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the

15 Sherman Act (15 U.S.C. § 1).

16       122.    The acts done by each of the Defendants as part of, and in furtherance of, their

17 contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents,

18 employees, or representatives while actively engaged in the management of Defendants' affairs.

19       123.    During the Class Period, Defendants and their co-conspirators entered into a

20 continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise,

21 stabilize, and control prices for Vehicle Carrier Services, thereby creating anticompetitive

22 effects.

23       124.    The anticompetitive acts were intentionally directed at the United States market

24 for Vehicle Carrier Services and had a substantial and foreseeable effect on interstate commerce

25 by raising and fixing prices for Vehicle Carrier Services throughout the United States.

26       125.    The conspiratorial acts and combinations have caused unreasonable restraints in

27 the market for Vehicle Carrier Services.

28

126. As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Vehicle Carrier Services have been harmed by being forced to pay inflated, supra-competitive prices for Vehicle Carrier Services.

127. In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

128. Defendants' conspiracy had the following effects, among others:

(a) Price competition in the market for Vehicle Carrier Services has been restrained, suppressed, and/or eliminated in the United States;

(b) Prices for Vehicle Carrier Services provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c) Plaintiffs and members of the Nationwide Class who purchased Vehicle Carrier Services indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

129. Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Vehicle Carrier Services purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

130. The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

131. Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

///

///

1

**SECOND CLAIM FOR RELIEF**

2

**Violation of State Antitrust Statutes**

3

**(on behalf of Plaintiffs and the Damages Class)**

4

132.    Plaintiffs repeat and re-allege the allegations set forth above.

5    133.    During the Class Period, Defendants and their co-conspirators engaged in a

6    continuing contract, combination or conspiracy with respect to the provision of Vehicle Carrier

7    Services in unreasonable restraint of trade and commerce and in violation of the various state

8    antitrust and other statutes set forth below.

9    134.    The contract, combination, or conspiracy consisted of an agreement among the

10    Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially

11    supra-competitive prices for Vehicle Carrier Services and to allocate customers for Vehicle

12    Carrier Services in the United States.

13    135.    In formulating and effectuating this conspiracy, Defendants and their co-

14    conspirators performed acts in furtherance of the combination and conspiracy, including:

15    (a)    participating in meetings and conversations among themselves in the United

16    States and elsewhere during which they agreed to price Vehicle Carrier Services at

17    certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices

18    paid by Plaintiffs and members of the Damages Class with respect to Vehicle Carrier

19    Services provided in the United States;

20    (b)    allocating customers and markets for Vehicle Carrier Services provided in the

21    United States in furtherance of their agreements; and

22    (c)    participating in meetings and conversations among themselves in the United

23    States and elsewhere to implement, adhere to, and police the unlawful agreements they

24    reached.

25    136.    Defendants and their co-conspirators engaged in the actions described above for

26    the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize

27    prices and to allocate customers with respect to Vehicle Carrier Services.

28

**CLASS ACTION COMPLAINT**                                                                                31

1    137.    Defendants' anticompetitive acts described above were knowing, willful and

2  constitute violations or flagrant violations of the following state antitrust statutes.

3    138.    Defendants have entered into an unlawful agreement in restraint of trade in

4  violation of the Arizona Revised Statutes, §§ 44-1401, et seq.

5    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

6    Carrier Services price competition was restrained, suppressed, and eliminated throughout

7    Arizona; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

8    at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages

9    Class were deprived of free and open competition; and (4) Plaintiffs and members of the

10    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

11    Services.

12    (b)    During the Class Period, Defendants' illegal conduct substantially affected

13    Arizona commerce.

14    (c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and

15    members of the Damages Class have been injured in their business and property and are

16    threatened with further injury.

17    (d)    By reason of the foregoing, Defendants entered into agreements in restraint of

18    trade in violation of Ariz. Rev. Stat. §§ 44-1401, et seq.  Accordingly, Plaintiffs and

19    members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§

20    44-1401, et seq.

21    139.    Defendants have entered into an unlawful agreement in restraint of trade in

22  violation of the California Business and Professions Code, §§ 16700, et seq.

23    (a)    During the Class Period, Defendants and their co-conspirators entered into and

24    engaged in a continuing unlawful trust in restraint of the trade and commerce described

25    above in violation of Section 16720, California Business and Professions Code.

26    Defendants, and each of them, have acted in violation of Section 16720 to fix, raise,

27    stabilize, and maintain prices of, and allocate markets for, Vehicle Carrier Services at

28    supra-competitive levels.

**CLASS ACTION COMPLAINT**                                                                  32

1

(b)    The aforesaid violations of Section 16720, California Business and Professions

2    Code, consisted, without limitation, of a continuing unlawful trust and concert of action

3    among the Defendants and their co-conspirators, the substantial terms of which were to

4    fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Vehicle

5    Carrier Services.

6    (c)    For the purpose of forming and effectuating the unlawful trust, the Defendants

7    and their co-conspirators have done those things which they combined and conspired to

8    do, including but not limited to the acts, practices and course of conduct set forth above

9    and the following:  (1) Fixing, raising, stabilizing, and pegging the price of Vehicle

10    Carrier Services; and (2) Allocating among themselves the provision of Vehicle Carrier

11    Services.

12    (d)    The combination and conspiracy alleged herein has had, inter alia, the following

13    effects: (1) Price competition in the provision of Vehicle Carrier Services has been

14    restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Vehicle

15    Carrier Services provided by Defendants and their co-conspirators have been fixed,

16    raised, stabilized, and pegged at artificially high, non-competitive levels in the State of

17    California and throughout the United States; and (3) Those who purchased Vehicle

18    Carrier Services directly or indirectly from Defendants and their co-conspirators have

19    been deprived of the benefit of free and open competition.

20    (e)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

21    members of the Damages Class have been injured in their business and property in that

22    they paid more for Vehicle Carrier Services than they otherwise would have paid in the

23    absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section

24    16720 of the California Business and Professions Code, Plaintiffs and members of the

25    Damages Class seek treble damages and their cost of suit, including a reasonable

26    attorney's fee, pursuant to Section 16750(a) of the California Business and Professions

27    Code.

28

1    140.    Defendants have entered into an unlawful agreement in restraint of trade in

2  violation of the District of Columbia Code Annotated §§ 28-4501, et seq.

3    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

4    Carrier Services price competition was restrained, suppressed, and eliminated throughout

5    the District of Columbia; (2) Vehicle Carrier Services prices were raised, fixed,

6    maintained and stabilized at artificially high levels throughout the District of Columbia;

7    (3) Plaintiffs and members of the Damages Class were deprived of free and open

8    competition; and (4) Plaintiffs and members of the Damages Class paid supra-

9    competitive, artificially inflated prices for Vehicle Carrier Services.

10    (b)    During the Class Period, Defendants' illegal conduct substantially affected

11    District of Columbia commerce.

12    (c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and

13    members of the Damages Class have been injured in their business and property and are

14    threatened with further injury.

15    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

16    of trade in violation of District of Columbia Code Ann. §§ 28-4501, et seq. Accordingly,

17    Plaintiffs and members of the Damages Class seek all forms of relief available under

18    District of Columbia Code Ann. §§ 28-4501, et seq.

19    141.    Defendants have entered into an unlawful agreement in restraint of trade in

20  violation of the Iowa Code §§ 553.1, et seq.

21    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

22    Carrier Services price competition was restrained, suppressed, and eliminated throughout

23    Iowa; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at

24    artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class

25    were deprived of free and open competition; and (4) Plaintiffs and members of the

26    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

27    Services.

28

**CLASS ACTION COMPLAINT**                                                                                   34

1     (b)    During the Class Period, Defendants' illegal conduct substantially affected Iowa

2    commerce.

3     (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

4    members of the Damages Class have been injured in their business and property and are

5    threatened with further injury.

6     (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

7    of trade in violation of Iowa Code §§ 553.1, et seq. Accordingly, Plaintiffs and members

8    of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, et seq.

9    142.    Defendants have entered into an unlawful agreement in restraint of trade in

10  violation of the Kansas Statutes Annotated, §§ 50-101, et seq.

11     (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

12    Carrier Services price competition was restrained, suppressed, and eliminated throughout

13    Kansas; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

14    at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages

15    Class were deprived of free and open competition; and (4) Plaintiffs and members of the

16    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

17    Services.

18     (b)    During the Class Period, Defendants' illegal conduct substantially affected

19    Kansas commerce.

20     (c)    As a direct and proximate result of defendants' unlawful conduct, Plaintiffs and

21    members of the Damages Class have been injured in their business and property and are

22    threatened with further injury.

23     (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

24    of trade in violation of Kansas Stat. Ann. §§ 50-101, et seq. Accordingly, Plaintiffs and

25    members of the Damages Class seek all forms of relief available under Kansas Stat. Ann.

26    §§ 50-101, et seq.

27    143.    Defendants have entered into an unlawful agreement in restraint of trade in

28  violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, et seq.

**CLASS ACTION COMPLAINT**        35

1    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

2 Carrier Services price competition was restrained, suppressed, and eliminated throughout

3 Maine; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

4 at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages

5 Class were deprived of free and open competition; and (4) Plaintiffs and members of the

6 Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

7 Services.

8    (b)    During the Class Period, Defendants' illegal conduct substantially affected Maine

9 commerce.

10    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

11 members of the Damages Class have been injured in their business and property and are

12 threatened with further injury.

13    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

14 of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, et seq. Accordingly, Plaintiffs

15 and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann.

16 10, §§ 1101, et seq.

17    144.    Defendants have entered into an unlawful agreement in restraint of trade in

18 violation of the Michigan Compiled Laws Annotated §§ 445.771, et seq.

19    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

20 Carrier Services price competition was restrained, suppressed, and eliminated throughout

21 Michigan; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

22 stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of

23 the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

24 members of the Damages Class paid supra-competitive, artificially inflated prices for

25 Vehicle Carrier Services.

26    (b)    During the Class Period, Defendants' illegal conduct substantially affected

27 Michigan commerce.

28

**CLASS ACTION COMPLAINT**                    36

1     (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

2    members of the Damages Class have been injured in their business and property and are

3    threatened with further injury.

4     (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

5    of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, et seq. Accordingly,

6    Plaintiffs and members of the Damages Class seek all relief available under Michigan

7    Comp. Laws Ann. §§ 445.771, et seq.

8    145.    Defendants have entered into an unlawful agreement in restraint of trade in

9   violation of the Minnesota Annotated Statutes §§ 325D.49, et seq.

10    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

11    Carrier Services price competition was restrained, suppressed, and eliminated throughout

12    Minnesota; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

13    stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of

14    the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

15    members of the Damages Class paid supra-competitive, artificially inflated prices for

16    Vehicle Carrier Services.

17    (b)    During the Class Period, Defendants' illegal conduct substantially affected

18    Minnesota commerce.

19    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

20    members of the Damages Class have been injured in their business and property and are

21    threatened with further injury.

22    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

23    of trade in violation of Minnesota Stat. §§ 325D.49, et seq. Accordingly, Plaintiffs and

24    members of the Damages Class seek all relief available under Minnesota Stat. §§

25    325D.49, et seq.

26    146.    Defendants have entered into an unlawful agreement in restraint of trade in

27   violation of the Mississippi Code Annotated §§ 75-21-1, et seq.

28

**CLASS ACTION COMPLAINT**                 37

1   (a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle

2   Carrier Services price competition was restrained, suppressed, and eliminated throughout

3   Mississippi; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

4   stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of

5   the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

6   members of the Damages Class paid supra-competitive, artificially inflated prices for

7   Vehicle Carrier Services.

8   (b)     During the Class Period, Defendants' illegal conduct substantially affected

9   Mississippi commerce.

10  (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

11  members of the Damages Class have been injured in their business and property and are

12  threatened with further injury.

13  (d)     By reason of the foregoing, Defendants have entered into agreements in restraint

14  of trade in violation of Mississippi Code Ann. § 75-21-1, et seq. Accordingly, Plaintiffs

15  and members of the Damages Class seek all relief available under Mississippi Code Ann.

16  § 75-21-1, et seq.

17  147.    Defendants have entered into an unlawful agreement in restraint of trade in

18  violation of the Nebraska Revised Statutes §§ 59-801, et seq.

19  (a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle

20  Carrier Services price competition was restrained, suppressed, and eliminated throughout

21  Nebraska; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

22  stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of

23  the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

24  members of the Damages Class paid supra-competitive, artificially inflated prices for

25  Vehicle Carrier Services.

26  (b)     During the Class Period, Defendants' illegal conduct substantially affected

27  Nebraska commerce.

28

**CLASS ACTION COMPLAINT**                                                        38

1    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

2    members of the Damages Class have been injured in their business and property and are

3    threatened with further injury.

4    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

5    of trade in violation of Nebraska Revised Statutes §§ 59-801, et seq. Accordingly,

6    Plaintiffs and members of the Damages Class seek all relief available under Nebraska

7    Revised Statutes §§ 59-801, et seq.

8    148.    Defendants have entered into an unlawful agreement in restraint of trade in

9    violation of the Nevada Revised Statutes Annotated §§ 598A.010, et seq.

10    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

11    Carrier Services price competition was restrained, suppressed, and eliminated throughout

12    Nevada; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

13    at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages

14    Class were deprived of free and open competition; and (4) Plaintiffs and members of the

15    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

16    Services.

17    (b)    During the Class Period, Defendants' illegal conduct substantially affected

18    Nevada commerce.

19    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

20    members of the Damages Class have been injured in their business and property and are

21    threatened with further injury.

22    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

23    of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, et seq. Accordingly, Plaintiffs

24    and members of the Damages Class seek all relief available under Nevada Rev. Stat.

25    Ann. §§ 598A, et seq.

26    149.    Defendants have entered into an unlawful agreement in restraint of trade in

27    violation of the New Hampshire Revised Statutes §§ 356:1, et seq.

28

**CLASS ACTION COMPLAINT**                                                                 39

(a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier Services price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier Services.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, et seq.

150.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, et seq.

(a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle Carrier Services price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier Services.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

1    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

2    members of the Damages Class have been injured in their business and property and are

3    threatened with further injury.

4    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

5    of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, et seq. Accordingly, Plaintiffs

6    and members of the Damages Class seek all relief available under New Mexico Stat.

7    Ann. §§ 57-1-1, et seq.

8    151.    Defendants have entered into an unlawful agreement in restraint of trade in

9  violation of the New York General Business Laws §§ 340, et seq.

10    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

11    Carrier Services price competition was restrained, suppressed, and eliminated throughout

12    New York; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

13    stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of

14    the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

15    members of the Damages Class paid supra-competitive, artificially inflated prices for

16    Vehicle Carrier Services when they purchased Vehicles transported by Vehicle Carrier

17    Services, or purchased products that were otherwise of lower quality, than would have

18    been absent the Defendants' illegal acts, or were unable to purchase products that they

19    would have otherwise have purchased absent the illegal conduct.

20    (b)    During the Class Period, Defendants' illegal conduct substantially affected New

21    York commerce.

22    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

23    members of the Damages Class have been injured in their business and property and are

24    threatened with further injury.

25    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

26    of trade in violation of the New York Donnelly Act, §§ 340, et seq. The conduct set forth

27    above is a per se violation of the Act. Accordingly, Plaintiffs and members of the

28    Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, et seq.

**CLASS ACTION COMPLAINT**        41

1       152.    Defendants have entered into an unlawful agreement in restraint of trade in

2    violation of the North Carolina General Statutes §§ 75-1, et seq.

3            (a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle

4    Carrier Services price competition was restrained, suppressed, and eliminated throughout

5    North Carolina; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

6    stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members

7    of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

8    members of the Damages Class paid supra-competitive, artificially inflated prices for

9    Vehicle Carrier Services.

10           (b)     During the Class Period, Defendants' illegal conduct substantially affected North

11   Carolina commerce.

12           (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

13   members of the Damages Class have been injured in their business and property and are

14   threatened with further injury.

15           (d)     By reason of the foregoing, Defendants have entered into agreements in restraint

16   of trade in violation of North Carolina Gen. Stat. §§ 75-1, et seq.  Accordingly, Plaintiffs

17   and members of the Damages Class seek all relief available under North Carolina Gen.

18   Stat. §§ 75-1, et. seq.

19      153.    Defendants have entered into an unlawful agreement in restraint of trade in

20   violation of the North Dakota Century Code §§ 51-08.1-01, et seq.

21           (a)     Defendants' combinations or conspiracies had the following effects: (1) Vehicle

22   Carrier Services price competition was restrained, suppressed, and eliminated throughout

23   North Dakota; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

24   stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members

25   of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

26   members of the Damages Class paid supra-competitive, artificially inflated prices for

27   Vehicle Carrier Services.

28

**CLASS ACTION COMPLAINT**                                                                    42

1    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on

2    North Dakota commerce.

3    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

4    members of the Damages Class have been injured in their business and property and are

5    threatened with further injury.

6    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

7    of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, et seq. Accordingly,

8    Plaintiffs and members of the Damages Class seek all relief available under North Dakota

9    Cent. Code §§ 51-08.1-01, et seq.

10    154.    Defendants have entered into an unlawful agreement in restraint of trade in

11 violation of the Oregon Revised Statutes §§ 646.705, et seq.

12    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

13    Carrier Services price competition was restrained, suppressed, and eliminated throughout

14    Oregon; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized

15    at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages

16    Class were deprived of free and open competition; and (4) Plaintiffs and members of the

17    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

18    Services.

19    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on

20    Oregon commerce.

21    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

22    members of the Damages Class have been injured in their business and property and are

23    threatened with further injury.

24    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

25    of trade in violation of Oregon Revised Statutes §§ 646.705, et seq. Accordingly,

26    Plaintiffs and members of the Damages Class seek all relief available under Oregon

27    Revised Statutes §§ 646.705, et seq.

28

**CLASS ACTION COMPLAINT**                                                          43

1   155.   Defendants have entered into an unlawful agreement in restraint of trade in
2   violation of the South Dakota Codified Laws §§ 37-1-3.1, et seq.

3       (a)   Defendants' combinations or conspiracies had the following effects: (1) Vehicle
4   Carrier Services price competition was restrained, suppressed, and eliminated throughout
5   South Dakota; (2) Vehicle Carrier Services prices were raised, fixed, maintained and
6   stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members
7   of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and
8   members of the Damages Class paid supra-competitive, artificially inflated prices for
9   Vehicle Carrier Services.

10      (b)   During the Class Period, Defendants' illegal conduct had a substantial effect on
11  South Dakota commerce.

12      (c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and
13  members of the Damages Class have been injured in their business and property and are
14  threatened with further injury.

15      (d)   By reason of the foregoing, Defendants have entered into agreements in restraint
16  of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, et seq.  Accordingly,
17  Plaintiffs and members of the Damages Class seek all relief available under South Dakota
18  Codified Laws Ann. §§ 37-1, et seq.

19  156.   Defendants have entered into an unlawful agreement in restraint of trade in
20  violation of the Tennessee Code Annotated §§ 47-25-101, et seq.

21      (a)   Defendants' combinations or conspiracies had the following effects: (1) Vehicle
22  Carrier Services price competition was restrained, suppressed, and eliminated throughout
23  Tennessee; (2) Vehicle Carrier Services prices were raised, fixed, maintained and
24  stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of
25  the Damages Class were deprived of free and open competition; and (4) Plaintiffs and
26  members of the Damages Class paid supra-competitive, artificially inflated prices for
27  Vehicle Carrier Services.

28

**CLASS ACTION COMPLAINT**                                                    44

1    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on

2    Tennessee commerce.

3    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

4    members of the Damages Class have been injured in their business and property and are

5    threatened with further injury.

6    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

7    of trade in violation of Tennessee Code Ann. §§ 47-25-101, et seq. Accordingly,

8    Plaintiffs and members of the Damages Class seek all relief available under Tennessee

9    Code Ann. §§ 47-25-101, et seq.

10    157.    Defendants have entered into an unlawful agreement in restraint of trade in

11    violation of the Utah Code Annotated §§ 76-10-911, et seq.

12    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

13    Carrier Services price competition was restrained, suppressed, and eliminated throughout

14    Utah; (2) Vehicle Carrier Services prices were raised, fixed, maintained and stabilized at

15    artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class

16    were deprived of free and open competition; and (4) Plaintiffs and members of the

17    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

18    Services.

19    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on

20    Utah commerce.

21    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

22    members of the Damages Class have been injured in their business and property and are

23    threatened with further injury.

24    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

25    of trade in violation of Utah Code Annotated §§ 76-10-911, et seq. Accordingly,

26    Plaintiffs and members of the Damages Class seek all relief available under Utah Code

27    Annotated §§ 76-10-911, et seq.

28

**CLASS ACTION COMPLAINT**    45

1   158.   Defendants have entered into an unlawful agreement in restraint of trade in

2   violation of the Vermont Stat. Ann. 9 §§ 2453, et seq.

3   (a)   Defendants' combinations or conspiracies had the following effects: (1) Vehicle

4   Carrier Services price competition was restrained, suppressed, and eliminated throughout

5   Vermont; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

6   stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of

7   the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

8   members of the Damages Class paid supra-competitive, artificially inflated prices for

9   Vehicle Carrier Services.

10  (b)   During the Class Period, Defendants' illegal conduct had a substantial effect on

11  Vermont commerce.

12  (c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

13  members of the Damages Class have been injured in their business and property and are

14  threatened with further injury.

15  (d)   By reason of the foregoing, Defendants have entered into agreements in restraint

16  of trade in violation of Vermont Stat. Ann. 9 §§ 2453, et seq. Accordingly, Plaintiffs and

17  members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§

18  2453, et seq.

19  159.   Defendants have entered into an unlawful agreement in restraint of trade in

20  violation of the West Virginia Code §§ 47-18-1, et seq.

21  (a)   Defendants' combinations or conspiracies had the following effects: (1) Vehicle

22  Carrier Services price competition was restrained, suppressed, and eliminated throughout

23  West Virginia; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

24  stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members

25  of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

26  members of the Damages Class paid supra-competitive, artificially inflated prices for

27  Vehicle Carrier Services.

28

**CLASS ACTION COMPLAINT**                                              46

1    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on

2    West Virginia commerce.

3    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

4    members of the Damages Class have been injured in their business and property and are

5    threatened with further injury.

6    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

7    of trade in violation of West Virginia Code §§ 47-18-1, et seq. Accordingly, Plaintiffs

8    and members of the Damages Class seek all relief available under West Virginia Code §§

9    47-18-1, et seq.

10    160.    Defendants have entered into an unlawful agreement in restraint of trade in

11  violation of the Wisconsin Statutes §§ 133.01, et seq.

12    (a)    Defendants' combinations or conspiracies had the following effects: (1) Vehicle

13    Carrier Services price competition was restrained, suppressed, and eliminated throughout

14    Wisconsin; (2) Vehicle Carrier Services prices were raised, fixed, maintained and

15    stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of

16    the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

17    members of the Damages Class paid supra-competitive, artificially inflated prices for

18    Vehicle Carrier Services.

19    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on

20    Wisconsin commerce.

21    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

22    members of the Damages Class have been injured in their business and property and are

23    threatened with further injury.

24    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint

25    of trade in violation of Wisconsin Stat. §§ 133.01, et seq. Accordingly, Plaintiffs and

26    members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01,

27    et seq.

28

**CLASS ACTION COMPLAINT**    47

1  161. Plaintiffs and members of the Damages Class in each of the above states have
2  been injured in their business and property by reason of Defendants' unlawful combination,
3  contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid
4  more for Vehicle Carrier Services than they otherwise would have paid in the absence of
5  Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states
6  were designed to prevent and flows from that which makes Defendants' conduct unlawful.

7  162. In addition, Defendants have profited significantly from the aforesaid conspiracy.
8  Defendants' profits derived from their anticompetitive conduct come at the expense and
9  detriment of members of the Plaintiffs and the members of the Damages Class.

10  163. Accordingly, Plaintiffs and the members of the Damages Class in each of the
11  above jurisdictions seek damages (including statutory damages where applicable), to be trebled
12  or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit,
13  including reasonable attorneys' fees, to the extent permitted by the above state laws.

14  ### THIRD CLAIM FOR RELIEF

15  ### Violation of State Consumer Protection Statutes

16  ### (on behalf of Plaintiffs and the Damages Class)

17  164. Plaintiffs repeat and re-allege the allegations set forth above.

18  165. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or
19  fraudulent acts or practices in violation of the state consumer protection and unfair competition
20  statutes listed below.

21  166. Defendants have engaged in unfair competition or unfair, unconscionable,
22  deceptive or fraudulent acts or practices in violation of California Business and Professions Code
23  § 17200, et seq.

24  (a) During the Class Period, Defendants marketed, sold, or distributed Vehicle
25  Carrier Services in California, and committed and continue to commit acts of unfair
26  competition, as defined by Sections 17200, et seq. of the California Business and
27  Professions Code, by engaging in the acts and practices specified above.

28

**CLASS ACTION COMPLAINT** 48

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)     The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, et seq., including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, et seq., of the California Business and Professions Code, set forth above;

(d)     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, et seq., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e)     Defendants' acts or practices are unfair to purchasers of Vehicle Carrier Services (or Vehicles transported by them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(f)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the

1    Damages Class to pay supra-competitive and artificially-inflated prices for Vehicle

2    Carrier Services (or Vehicles transported by them).  Plaintiffs and the members of the

3    Damages Class suffered injury in fact and lost money or property as a result of such

4    unfair competition.

5        (j)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of

6    the California Business and Professions Code.

7        (k)     As alleged in this Complaint, Defendants and their co-conspirators have been

8    unjustly enriched as a result of their wrongful conduct and by Defendants' unfair

9    competition.  Plaintiffs and the members of the Damages Class are accordingly entitled to

10   equitable relief including restitution and/or disgorgement of all revenues, earnings,

11   profits, compensation, and benefits that may have been obtained by Defendants as a

12   result of such business practices, pursuant to the California Business and Professions

13   Code, Sections 17203 and 17204.

14   167.   Defendants have engaged in unfair competition or unfair, unconscionable, or

15   deceptive acts or practices in violation of District of Columbia Code § 28-3901, et seq.

16       (a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by

17   affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive

18   levels, the prices at which Vehicle Carrier Services were sold, distributed or obtained in

19   the District of Columbia

20       (b)     The foregoing conduct constitutes "unlawful trade practices," within the meaning

21   of D.C. Code § 28-3904.  Plaintiffs were not aware of Defendants' price-fixing

22   conspiracy and were therefore unaware that they were being unfairly and illegally

23   overcharged.  There was a gross disparity of bargaining power between the parties with

24   respect to the price charged by Defendants for Vehicle Carrier Services.  Defendants had

25   the sole power to set that price and Plaintiffs had no power to negotiate a lower price.

26   Moreover, Plaintiffs lacked any meaningful choice in purchasing Vehicle Carrier

27   Services because they were unaware of the unlawful overcharge and there was no

28   alternative source of supply through which Plaintiffs could avoid the overcharges.

1  Defendants' conduct with regard to sales of Vehicle Carrier Services, including their

2  illegal conspiracy to secretly fix the price of Vehicle Carrier Services at supra-

3  competitive levels and overcharge consumers, was substantively unconscionable because

4  it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the

5  public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of

6  competition that has resulted from Defendants' conspiracy has ultimately resulted in

7  unconscionably higher prices for purchasers so that there was a gross disparity between

8  the price paid and the value received for Vehicle Carrier Services.

9  (c)    Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

10  Services price competition was restrained, suppressed, and eliminated throughout the

11  District of Columbia; (2) Vehicle Carrier Services prices were raised, fixed, maintained,

12  and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs

13  and the Damages Class were deprived of free and open competition; and (4) Plaintiffs

14  and the Damages Class paid supra-competitive, artificially inflated prices for Vehicle

15  Carrier Services.

16  (d)    As a direct and proximate result of the Defendants' conduct, Plaintiffs and

17  members of the Damages Class have been injured and are threatened with further injury.

18  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in

19  violation of District of Columbia Code § 28-3901, et seq., and, accordingly, Plaintiffs and

20  members of the Damages Class seek all relief available under that statute.

21  168.    Defendants have engaged in unfair competition or unfair, unconscionable, or

22  deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act,

23  Fla. Stat. §§ 501.201, et seq.

24  (a)    Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

25  Services price competition was restrained, suppressed, and eliminated throughout

26  Florida; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized

27  at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages

28  Class were deprived of free and open competition; and (4) Plaintiffs and members of the

**CLASS ACTION COMPLAINT**                                                         51

1    Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

2    Services.

3    (b)     During the Class Period, Defendants' illegal conduct substantially affected

4    Florida commerce and consumers.

5    (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

6    members of the Damages Class have been injured and are threatened with further injury.

7    (d)     Defendants have engaged in unfair competition or unfair or deceptive acts or

8    practices in violation of Florida Stat. § 501.201, et seq., and, accordingly, Plaintiffs and

9    members of the Damages Class seek all relief available under that statute.

10   169.    Defendants have engaged in unfair competition or unfair, unconscionable, or

11   deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, et

12   seq.

13   (a)     Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

14   Services price competition was restrained, suppressed, and eliminated throughout

15   Hawaii; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized

16   at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages

17   Class were deprived of free and open competition; and (4) Plaintiffs and members of the

18   Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier

19   Services.

20   (b)     During the Class Period, Defendants' illegal conduct substantially affected

21   Hawaii commerce and consumers.

22   (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

23   members of the Damages Class have been injured and are threatened with further injury.

24   (d)     Defendants have engaged in unfair competition or unfair or deceptive acts or

25   practices in violation of Hawaii Rev. Stat. § 480, et seq., and, accordingly, Plaintiffs and

26   members of the Damages Class seek all relief available under that statute.

27

28

**CLASS ACTION COMPLAINT**                                                              52

1  170.   Defendants have engaged in unfair competition or unfair, unconscionable, or

2  deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev.

3  Stat. § 407.010, et. seq.

4  (a)   Missouri Plaintiffs and members of this Damages Class purchased Vehicle Carrier

5  Services for personal, family, or household purposes.

6  (b)   Defendants engaged in the conduct described herein in connection with the sale of

7  Vehicle Carrier Services in trade or commerce in a market that includes Missouri.

8  (c)   Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at

9  artificial and non-competitive levels, the prices at which Vehicle Carrier Services were

10  sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in

11  that it was unlawful under federal and state law, violated public policy, was unethical,

12  oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of

13  the Damages Class.

14  (d)   Defendants concealed, suppressed, and omitted to disclose material facts to

15  Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities

16  and artificially inflated prices for Vehicle Carrier Services. The concealed, suppressed,

17  and omitted facts would have been important to Plaintiffs and members of the Damages

18  Class as they related to the cost of Vehicle Carrier Services they purchased.

19  (e)   Defendants misrepresented the real cause of price increases and/or the absence of

20  price reductions in Vehicle Carrier Services by making public statements that were not in

21  accord with the facts.

22  (f)   Defendants' statements and conduct concerning the price of Vehicle Carrier

23  Services were deceptive as they had the tendency or capacity to mislead Plaintiffs and

24  members of the Damages Class to believe that they were purchasing Vehicle Carrier

25  Services at prices established by a free and fair market.

26  (g)   Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

27  Services price competition was restrained, suppressed, and eliminated throughout

28  Missouri; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and

**CLASS ACTION COMPLAINT**                                                    53

1  stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of

2  the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

3  members of the Damages Class paid supra-competitive, artificially inflated prices for

4  Vehicle Carrier Services.

5      (h)    The foregoing acts and practices constituted unlawful practices in violation of the

6  Missouri Merchandising Practices Act.

7      (i)    As a direct and proximate result of the above-described unlawful practices,

8  Plaintiff and members of the Damages Class suffered ascertainable loss of money or

9  property.

10      (j)    Accordingly, Plaintiffs and members of the Damages Class seek all relief

11  available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. §

12  407.020, which prohibits "the act, use or employment by any person of any deception,

13  fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment,

14  suppression, or omission of any material fact in connection with the sale or advertisement

15  of any merchandise in trade or commerce...," as further interpreted by the Missouri Code

16  of State Regulations, 15 CSR 60-7.010, et seq., 15 CSR 60-8.010, et seq., and 15 CSR

17  60-9.010, et seq., and Mo. Rev. Stat. § 407.025, which provides for the relief sought in

18  this count.

19      171.    Defendants have engaged in unfair competition or unfair, unconscionable, or

20  deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer

21  Protection Act of 1970, Mont. Code, §§ 30-14-103, et seq., and §§ 30-14-201, et. seq.

22      (a)    Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

23  Services price competition was restrained, suppressed, and eliminated throughout

24  Montana; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and

25  stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of

26  the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

27  members of the Damages Class paid supra-competitive, artificially inflated prices for

28  Vehicle Carrier Services.

1     (b)    During the Class Period, Defendants marketed, sold, or distributed Vehicle

2 Carrier Services in Montana, and Defendants' illegal conduct substantially affected

3 Montana commerce and consumers.

4     (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

5 members of the Damages Class have been injured and are threatened with further injury.

6     (d)    Defendants have engaged in unfair competition or unfair or deceptive acts or

7 practices in violation of Mont. Code, §§ 30-14-103, et seq., and §§ 30-14-201, et. seq.,

8 and, accordingly, Plaintiffs and members of the Damages Class seek all relief available

9 under that statute.

10     172.    Defendants have engaged in unfair competition or unfair, unconscionable, or

11 deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, et seq.

12     (a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by

13 affecting, fixing, controlling and/or maintaining at non-competitive and artificially

14 inflated levels, the prices at which Vehicle Carrier Services were sold, distributed or

15 obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and

16 members of the Damages Class.

17     (b)    The aforementioned conduct on the part of the Defendants constituted

18 "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such

19 conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs

20 and the members of the Damages Class and the prices paid by them for Vehicle Carrier

21 Services as set forth in N.M.S.A., § 57-12-2E. Plaintiffs were not aware of Defendants'

22 price-fixing conspiracy and were therefore unaware that they were being unfairly and

23 illegally overcharged. There was a gross disparity of bargaining power between the

24 parties with respect to the price charged by Defendants for Vehicle Carrier Services.

25 Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a

26 lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Vehicle

27 Carrier Services because they were unaware of the unlawful overcharge and there was no

28 alternative source of supply through which Plaintiffs could avoid the overcharges.

1  Defendants' conduct with regard to sales of Vehicle Carrier Services, including their

2  illegal conspiracy to secretly fix the price of Vehicle Carrier Services at supra-

3  competitive levels and overcharge consumers, was substantively unconscionable because

4  it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the

5  public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of

6  competition that has resulted from Defendants' conspiracy has ultimately resulted in

7  unconscionably higher prices for consumers so that there was a gross disparity between

8  the price paid and the value received for Vehicle Carrier Services.

9  (c)    Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

10  Services price competition was restrained, suppressed, and eliminated throughout New

11  Mexico; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized

12  at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the

13  Damages Class were deprived of free and open competition; and (4) Plaintiffs and the

14  members of the Damages Class paid supra-competitive, artificially inflated prices for

15  Vehicle Carrier Services.

16  (d)    During the Class Period, Defendants' illegal conduct substantially affected New

17  Mexico commerce and consumers.

18  (e)    As a direct and proximate result of the unlawful conduct of the Defendants,

19  Plaintiffs and the members of the Damages Class have been injured and are threatened

20  with further injury.

21  (f)    Defendants have engaged in unfair competition or unfair or deceptive acts or

22  practices in violation of New Mexico Stat. § 57-12-1, et seq., and, accordingly, Plaintiffs and the

23  members of the Damages Class seek all relief available under that statute.

24  173.    Defendants have engaged in unfair competition or unfair, unconscionable, or

25  deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.

26  (a)    Defendants agree to, and did in fact, act in restraint of trade or commerce by

27  affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels,

28  the prices at which Vehicle Carrier Services were sold, distributed or obtained in New

**CLASS ACTION COMPLAINT**                                                          56

1   York and took efforts to conceal their agreements from Plaintiffs and members of the

2   Damages Class.

3   (b)      Defendants and their co-conspirators made public statements about the prices of

4   Vehicle Carrier Services that either omitted material information that rendered the

5   statements that they made materially misleading or affirmatively misrepresented the real

6   cause of price increases for Vehicle Carrier Services; and Defendants alone possessed

7   material information that was relevant to consumers, but failed to provide the

8   information.

9   (c)      Because of Defendants' unlawful trade practices in the State of New York, New

10  York consumer class members who indirectly purchased Vehicle Carrier Services were

11  misled to believe that they were paying a fair price for Vehicle Carrier Services or the

12  price increases for Vehicle Carrier Services were for valid business reasons; and similarly

13  situated consumers were potentially affected by Defendants' conspiracy.

14  (d)      Defendants knew that their unlawful trade practices with respect to pricing

15  Vehicle Carrier Services would have an impact on New York consumers and not just the

16  Defendants' direct customers.

17  (e)      Defendants knew that their unlawful trade practices with respect to pricing

18  Vehicle Carrier Services would have a broad impact, causing consumer class members

19  who indirectly purchased Vehicle Carrier Services to be injured by paying more for

20  Vehicle Carrier Services than they would have paid in the absence of Defendants'

21  unlawful trade acts and practices.

22  (f)      The conduct of the Defendants described herein constitutes consumer-oriented

23  deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which

24  resulted in consumer injury and broad adverse impact on the public at large, and harmed

25  the public interest of New York State in an honest marketplace in which economic

26  activity is conducted in a competitive manner.

27  (g)      Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

28  Services price competition was restrained, suppressed, and eliminated throughout New

York; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Vehicle Carrier Services.

(h)     During the Class Period, Defendants marketed, sold, or distributed Vehicle Carrier Services in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Vehicle Carrier Services in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

174.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq.

(a)     Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Vehicle Carrier Services were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of Vehicle Carrier Services created the illusion of competitive pricing controlled by market forces rather than supra-

1  competitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants

2  deceptively concealed their unlawful activities by mutually agreeing not to divulge the

3  existence of the conspiracy to outsiders.

4  (c)    The conduct of the Defendants described herein constitutes consumer-oriented

5  deceptive acts or practices within the meaning of North Carolina law, which resulted in

6  consumer injury and broad adverse impact on the public at large, and harmed the public

7  interest of North Carolina consumers in an honest marketplace in which economic

8  activity is conducted in a competitive manner.

9  (d)    Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

10  Services price competition was restrained, suppressed, and eliminated throughout North

11  Carolina; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and

12  stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members

13  of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

14  members of the Damages Class paid supra-competitive, artificially inflated prices for

15  Vehicle Carrier Services.

16  (e)    During the Class Period, Defendants marketed, sold, or distributed Vehicle

17  Carrier Services in North Carolina, and Defendants' illegal conduct substantially affected

18  North Carolina commerce and consumers.

19  (f)    During the Class Period, each of the Defendants named herein, directly, or

20  indirectly and through affiliates they dominated and controlled, manufactured, sold

21  and/or distributed Vehicle Carrier Services in North Carolina.

22  (g)    Plaintiffs and members of the Damages Class seek actual damages for their

23  injuries caused by these violations in an amount to be determined at trial and are

24  threatened with further injury. Defendants have engaged in unfair competition or unfair

25  or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq.,

26  and, accordingly, Plaintiffs and members of the Damages Class seek all relief available

27  under that statute.

28

1      175.    Defendants have engaged in unfair competition or unfair, unconscionable, or

2 deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer

3 Protection Act, R.I. Gen. Laws §§ 6-13.1-1, et seq.

4      (a)    Members of this Damages Class purchased Vehicle Carrier Services for personal,

5      family, or household purposes.

6      (b)    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a

7      market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining,

8      at artificial and non-competitive levels, the prices at which Vehicle Carrier Services were

9      sold, distributed, or obtained in Rhode Island.

10      (c)    Defendants deliberately failed to disclose material facts to Plaintiffs and members

11      of the Damages Class concerning Defendants' unlawful activities and artificially inflated

12      prices for Vehicle Carrier Services. Defendants owed a duty to disclose such facts, and

13      considering the relative lack of sophistication of the average, non-business purchaser,

14      Defendants breached that duty by their silence. Defendants misrepresented to all

15      purchasers during the Class Period that Defendants' Vehicle Carrier Services prices were

16      competitive and fair.

17      (d)    Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

18      Services price competition was restrained, suppressed, and eliminated throughout Rhode

19      Island; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and stabilized

20      at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the

21      Damages Class were deprived of free and open competition; and (4) Plaintiffs and

22      members of the Damages Class paid supra-competitive, artificially inflated prices for

23      Vehicle Carrier Services.

24      (e)    As a direct and proximate result of the Defendants' violations of law, Plaintiffs

25      and members of the Damages Class suffered an ascertainable loss of money or property

26      as a result of Defendants' use or employment of unconscionable and deceptive

27      commercial practices as set forth above. That loss was caused by Defendants' willful and

28      deceptive conduct, as described herein.

1   (f)   Defendants' deception, including their affirmative misrepresentations and

2   omissions concerning the price of Vehicle Carrier Services, likely misled all purchasers

3   acting reasonably under the circumstances to believe that they were purchasing Vehicle

4   Carrier Services at prices set by a free and fair market. Defendants' affirmative

5   misrepresentations and omissions constitute information important to Plaintiffs and

6   members of the Damages Class as they related to the cost of Vehicle Carrier Services

7   they purchased.

8   (g)   Defendants have engaged in unfair competition or unfair or deceptive acts or

9   practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, et seq., and, accordingly,

10   Plaintiffs and members of the Damages Class seek all relief available under that statute.

11   176.   Defendants have engaged in unfair competition or unfair, unconscionable, or

12   deceptive acts or practices in violation of 9 Vermont § 2451, et seq.

13   (a)   Defendants agreed to, and did in fact, act in restraint of trade or commerce in a

14   market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at

15   artificial and non-competitive levels, the prices at which Vehicle Carrier Services were

16   sold, distributed, or obtained in Vermont.

17   (b)   Defendants deliberately failed to disclose material facts to Plaintiffs and members

18   of the Damages Class concerning Defendants' unlawful activities and artificially inflated

19   prices for Vehicle Carrier Services. Defendants owed a duty to disclose such facts, and

20   considering the relative lack of sophistication of the average, non-business purchaser,

21   Defendants breached that duty by their silence. Defendants misrepresented to all

22   purchasers during the Class Period that Defendants' Vehicle Carrier Services prices were

23   competitive and fair.

24   (c)   Defendants' unlawful conduct had the following effects: (1) Vehicle Carrier

25   Services price competition was restrained, suppressed, and eliminated throughout

26   Vermont; (2) Vehicle Carrier Services prices were raised, fixed, maintained, and

27   stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of

28   the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

**CLASS ACTION COMPLAINT**                                                                61

1  members of the Damages Class paid supra-competitive, artificially inflated prices for

2  Vehicle Carrier Services.

3  (d)  As a direct and proximate result of the Defendants' violations of law, Plaintiffs

4  and members of the Damages Class suffered an ascertainable loss of money or property

5  as a result of Defendants' use or employment of unconscionable and deceptive

6  commercial practices as set forth above. That loss was caused by Defendants' willful and

7  deceptive conduct, as described herein.

8  (e)  Defendants' deception, including their affirmative misrepresentations and

9  omissions concerning the price of Vehicle Carrier Services, likely misled all purchasers

10  acting reasonably under the circumstances to believe that they were purchasing Vehicle

11  Carrier Services at prices set by a free and fair market. Defendants' misleading conduct

12  and unconscionable activities constitutes unfair competition or unfair or deceptive acts or

13  practices in violation of 9 Vermont § 2451, et seq., and, accordingly, Plaintiffs and

14  members of the Damages Class seek all relief available under that statute.

**FOURTH CLAIM FOR RELIEF**

**Unjust Enrichment**

**(on behalf of Plaintiffs and the Damages Class)**

18  177.  Plaintiffs repeat and reallege the allegations set forth above.

19  178.  As a result of their unlawful conduct described above, Defendants have and will

20  continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a

21  minimum, unlawfully inflated prices and unlawful profits on Vehicle Carrier Services.

22  179.  Defendants have benefited from their unlawful acts and it would be inequitable

23  for Defendants to be permitted to retain any of the ill-gotten gains resulting from the

24  overpayments made by Plaintiffs and the members of the Damages Class for Vehicle Carrier

25  Services.

26  180.  Plaintiffs and the members of the Damages Class are entitled to the amount of

27  Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.

28  Plaintiffs and the members of the Damages Class are entitled to the establishment of a

**CLASS ACTION COMPLAINT**                                                          62

1 constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the

2 Damages Class may make claims on a pro rata basis

3 **PRAYER FOR RELIEF**

4 Accordingly, Plaintiffs respectfully request that:

5 1. The Court determine that this action may be maintained as a class action under

6 Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable

7 notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be

8 given to each and every member of the Classes;

9 2. That the unlawful conduct, contract, conspiracy, or combination alleged herein be

10 adjudged and decreed:

11 (a) An unreasonable restraint of trade or commerce in violation of Section 1 of the

12 Sherman Act;

13 (b) A per se violation of Section 1 of the Sherman Act;

14 (c) An unlawful combination, trust, agreement, understanding and/or concert of

15 action in violation of the state antitrust and unfair competition and consumer protection

16 laws as set forth herein; and

17 (d) Acts of unjust enrichment by Defendants as set forth herein.

18 3. Plaintiffs and the members of the Damages Class recover damages, to the

19 maximum extent allowed under such laws, and that a joint and several judgment in favor of

20 Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to

21 be trebled to the extent such laws permit;

22 4. Plaintiffs and the members of the Damages Class recover damages, to the

23 maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits

24 unlawfully gained from them;

25 5. Defendants, their affiliates, successors, transferees, assignees and other officers,

26 directors, partners, agents and employees thereof, and all other persons acting or claiming to act

27 on their behalf or in concert with them, be permanently enjoined and restrained from in any

28 manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination

**CLASS ACTION COMPLAINT** 63

1 alleged herein, or from entering into any other contract, conspiracy, or combination having a
2 similar purpose or effect, and from adopting or following any practice, plan, program, or device
3 having a similar purpose or effect;

4     6.    Plaintiffs and the members of the Damages Class be awarded restitution,
5 including disgorgement of profits Defendants obtained as a result of their acts of unfair
6 competition and acts of unjust enrichment;

7     7.    Plaintiffs and the members of the Classes be awarded pre- and post- judgment
8 interest as provided by law, and that such interest be awarded at the highest legal rate from and
9 after the date of service of this Complaint;

10     8.    Plaintiffs and the members of the Classes recover their costs of suit, including
11 reasonable attorneys' fees, as provided by law; and

12     9.    Plaintiffs and members of the Classes have such other and further relief as the
13 case may require and the Court may deem just and proper.

14 DATED: May 28, 2013                       **COTCHETT, PITRE & McCARTHY, LLP**

15                                      By

16                                     Steven N. Williams (SBN 175489)
                                    Frank C. Damrell, Jr. (SBN 37126)
17                                     Nancy L. Fineman (SBN 124870)
                                    Adam J. Zapala (SBN 245748)
18                                     Elizabeth T. Tran (SBN 280502)
                                    840 Malcolm Rd
19                                     Burlingame, CA 94010
20                                     Telephone: (650) 697-6000
                                    Facsimile: (650) 697-0577
21                                     swilliams@cpmlegal.com
                                    fdamrell@cpmlegal.com
22                                     nfineman@cpmlegal.com
                                    azapala@cpmlegal.com
23                                     etran@cpmlegal.com

24
25
26
27
28

**CLASS ACTION COMPLAINT**                                                     64

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRITZKER | LAW**

By _Elizabeth C. Pritzker (SW)_

Elizabeth C. Pritzker (SBN 146267)
Bethany L. Caracuzzo (SBN 190687)
Shiho Yamamoto (SBN 264741)
633 Battery Street, Suite 110
San Francisco, CA 94111
Tel: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzker-law.com
bc@pritzker-law.com
sy@pritzker-law.com

*Attorneys for Plaintiff and the Proposed Classes*

**CLASS ACTION COMPLAINT**                                        65

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED: May 28, 2013

COTCHETT, PITRE & McCARTHY, LLP

By _____

Steven N. Williams (SBN 175489)
Frank C. Damrell, Jr. (SBN 37126)
Nancy L. Fineman (SBN 124870)
Adam J. Zapala (SBN 245748)
Elizabeth T. Tran (SBN 280502)
840 Malcolm Rd
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
fdamrell@cpmlegal.com
nfineman@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com

PRITZKER | LAW

By _____

Elizabeth C. Pritzker (SBN 146267)
Bethany L. Caracuzzo (SBN 190687)
Shiho Yamamoto (SBN 264741)
633 Battery Street, Suite 110
San Francisco, CA 94111
Tel: (415) 692-0772
Fax: (415) 366-6110
ecp@pritzker-law.com
bc@pritzker-law.com
sy@pritzker-law.com

*Attorneys for Plaintiff and the Proposed Classes*

**CLASS ACTION COMPLAINT**                                                                 66